Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 8058 | DATE | 2/14/2001 |
| CASE TITLE | Theophilus Green v. Lifeusa Insurance Company | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry].

**Memorandum opinion and order entered. Accordingly, this Court affirms the 11/22/99 decision of the bankruptcy court.**

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 20 2001 date docketed | |
| | Notified counsel by telephone. | | | 35 |
| | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| GS | courtroom deputy's initials | 01 FEB 16 AM 11:28 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THEOPHILUS GREEN, | ) | No. 99 C 8058 |
| Defendant-Appellant, | ) | |
| | ) | On appeal from |
| | ) | The Honorable Erwin I. Katz |
| v. | ) | No. 97 B 32525 |
| | ) | Adversary No. 98 A 01175 |
| | ) | |
| LIFEUSA INSURANCE COMPANY | ) | Judge Robert W. Gettleman |
| Plaintiff-Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant-Appellant, Theophilus Green ("Green"), appeals the decision of the bankruptcy court in favor of plaintiff-appellee, LifeUSA Insurance Company ("LifeUSA"), LifeUSA Insurance Co. v. Green (In re Green), 241 B.R. 187 (Bankr. N.D. Ill. 1999).[1] For the reasons that follow, the court affirms the bankruptcy court.

## FACTS[2]

Green is a clinical psychologist who served in the United States Armed Forces from 1965 to 1968. In December 1993, Green applied for a life insurance policy ("the

---

[1] Appellant, a *pro se* litigant, argues that the bankruptcy court committed approximately forty-three errors. Appellant's arguments not discussed herein are irrelevant and therefore disregarded by the court. See Pesmen v. Bannockburn Lake Office Plaza Assocs. LP, 1999 U.S. Dist. LEXIS 8321 (N.D. Ill. May 21, 1999).

[2] The bankruptcy court fully detailed the facts of the case. Familiarity with those facts is assumed herein.

policy") with LifeUSA. That same month, Green applied for a rider ("the rider"), which would waive the premiums of the policy in the event Green were to become disabled.

The application for the policy asked Green whether he had ever received treatment by a physician or practitioner for various conditions, including any "nervous or mental conditions . . . or any disease or abnormality of the brain or nervous system."[3] The application for the rider asked Green similar questions, including whether he had "[e]ver applied for or received" disability benefits.[4] Green replied "No" to each of these questions. In addition, Green signed broad release forms that allowed LifeUSA to access his medical and other records.

LifeUSA issued both the policy and the rider to Green on February 23, 1994. In June 1994, Green suffered a stroke and submitted a claim to LifeUSA for waiver of the

---

[3] The policy questions included:

> WITHIN THE PAST 5 YEARS HAS ANY PERSON TO BE COVERED . . . [c]onsulted, been examined or been treated by any physician or practitioner?
>
> TO THE BEST OF YOUR KNOWLEDGE, HAS ANY PERSON TO BE COVERED HAD OR BEEN TOLD HE OR SHE HAD . . . [e]pilepsy, fainting spells, nervous or mental condition, neuritis, paralysis, or any disease or abnormality of the brain or nervous system?

[4] The rider questions included:

> Have you ever consulted any medical practioner [sic] for, or as far as you know, ever been treated for . . . [a]ny brain or nervous system disorder, e.g., epilepsy, convulsions, fainting or loss of consciousness, mental illness, constant nervousness or severe headaches?
>
> Have you ever . . . applied for or received any pension or benefits for sickness, disability or accident?
>
> Other than previously stated, as far as you know, have you in the last 5 years . . . [c]onsulted any medical practioner [sic] for any reason (including check-ups)?

2

policy premiums pursuant to the rider. LifeUSA accepted the claim and began waiving Green's premiums. Thereafter, LifeUSA learned that Green had received psychotherapy from approximately 1985 to 1994, had been receiving regular disability benefits from the Department of Veteran Affairs for his diagnosed condition of paranoid schizophrenia, and had been hospitalized six times from 1988 to 1993.

On February 22, 1996, LifeUSA filed a complaint in the Circuit Court of Cook County of Illinois to rescind the rider because of Green's material misrepresentations.[5] While that case was pending, Green damaged evidence and was sanctioned by the Cook County court. Thereafter, Green filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Pursuant to 11 U.S.C. § 362, the bankruptcy court stayed the Cook County case. On March 10, 1998, Green's bankruptcy case was converted to a Chapter 7 proceeding. On May 8, 1998, the policy was deemed rejected because it was not assumed by the estate.[6] LifeUSA then requested that Green's debts with LifeUSA be declared "nondischargeable" and asked the bankruptcy court to rescind or to reject the policy and the rider. In response, Green filed a series of motions and counterclaims.

Green's counterclaims, based on common law theories, were dismissed by the bankruptcy court due to lack of jurisdiction. On November 22, 1999, the bankruptcy

---

[5] LifeUSA did not seek to rescind the policy. As a result, the policy's two-year incontestability clause now bars rescission of the policy.

[6] Under 11 U.S.C. § 365(d)(2), Green needed to have assumed or rejected the policy, which is an executory contract. He did not do so. After the conversion to Chapter 7, the trustee had sixty days to assume the policy. 11 U.S.C. 348(c) (subjecting a proceeding that has been converted, as Green's was, to § 365(d)). The trustee did not do so. Therefore, the policy was deemed rejected pursuant to 11 U.S.C. § 365(d)(1).

3

court ruled on the pending motions. The bankruptcy court denied Green's motion to exclude medical information and granted LifeUSA's motion for summary judgment requesting rescission and/or rejection of the policy and/or the rider. Green subsequently filed this appeal.[7]

DISCUSSION

The court reviews the decision of the bankruptcy court *de novo*. Matter of UNR Industries, Inc., 986 F.2d 207, 208 (7th Cir. 1993). Green makes three arguments opposing that decision. First, Green claims that the bankruptcy court erred in denying his motion to exclude his medical information. Second, Green disputes various aspects of the bankruptcy court's rulings with regard to its jurisdiction. Third, Green argues that the policy and the rider are incontestable and, therefore, the bankruptcy court erred in granting in part LifeUSA's motion for summary judgment. The court will address each of these arguments in turn.

I. **Medical Information**

Green filed a motion with the bankruptcy court seeking to exclude the medical information that had been obtained by LifeUSA and that proved that Green had made material misrepresentations in applying for the policy and the rider. Green argues that the Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS §110/10, states that a recipient of therapy and the recipient's therapist may "refuse to disclose and to prevent the disclosure of the recipient's record or communications" in a

---

[7] On February 28, 2000, this court held that under 28 U.S.C. § 158(a)(1), the November 22, 1999 order is a final, appealable order.

4

civil case. Green's citation to that statute is correct, but not complete, because §110/10 of that Act includes the following applicable exception:

> [R]ecords and communications of the recipient may be disclosed in any civil . . . proceeding involving the validity of or benefits under a life . . . or disability insurance policy . . . insuring the recipient, but only if and to the extent that the recipient's mental condition, or treatment or services in connection therewith, is material element of any claim or defense of any party. 740 ILCS §110/10(a)(7).

This exception applies to the instant case, because Green's past medical treatment is directly related to LifeUSA's claim concerning the validity of or benefits under the policy and the rider. While the court sympathizes with Green's sensitivity about the publication of such information, it is clear from the uncontested facts that Green's embarrassment could have been avoided had he not made material misrepresentations when applying for the policy and the rider. The court further notes that Green agreed to the release, which allowed LifeUSA to obtain this information. Thus, the court finds that the bankruptcy court properly denied Green's motion to exclude medical information.

## II. Jurisdiction

### A. Jurisdiction over counterclaims

Green makes several arguments concerning jurisdiction. First, Green argues that the bankruptcy court erred by raising, *sua sponte*, the issue of its jurisdiction over Green's common law counterclaims. This is simply incorrect. Under Fed. R. Civ. P. 12(h)(3), a court must dismiss an action for lack of subject matter jurisdiction "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction." See International College of Surgeons v. City of Chicago, 91 F.3d 981, 986 (7th Cir. 1996) (citing Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 896-97 (1991).

Thus, the bankruptcy court's *sua sponte* inquiry into its jurisdiction over Green's counterclaims was appropriate.

Second, Green argues that the bankruptcy court erred in determining that it did not have jurisdiction over his counterclaims because they were related to the policy and the rider.[8] The bankruptcy court disagreed, finding that under 28 U.S.C. §157(a) the counterclaims did not arise under or in, and were not related to, the bankruptcy court's determination because they did not "affect the amount of property in bankruptcy estate or the distribution of that property among the creditors." In re Green, 241 B.R. at 195-97. This court agrees. The policy and the rider are not part of the estate because the trustee rejected them, and claims on them cannot be considered to affect the estate. Thus, the bankruptcy court correctly dismissed Green's counterclaims without prejudice, allowing Green to bring such claims before a court with proper jurisdiction.[9]

## B. Jurisdiction over the policy and the rider

Green next argues that the bankruptcy court did not have jurisdiction to determine the validity of the policy or the rider because they were not debts. Under 11 U.S.C. §101(12), a "debt" is a "liability on a claim." A "claim" is defined broadly as a "right to payment" or "to an equitable remedy," "whether such right is reduced to judgment,

---

[8] The court assumes that Green refers to 28 U.S.C. § 157(a), which allows district courts to transfer a proceeding to bankruptcy courts for matters arising under, arising in, or are related to a bankruptcy determination.

[9] Contrary to Green's assertion, this court is not that forum. The court is acting as an appellate court in the instant case and is accordingly restricted to reviewing the final, appealable actions taken by the bankruptcy court. The bankruptcy court's correct determination that it did not have jurisdiction over Green's counterclaims is the only final, appealable issue concerning the counterclaims that the court may review. Thus, the court will not reach the merits of Green's counterclaims against LifeUSA.

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Therefore, all of Green's legal obligations—*"no matter how remote or contingent"*— were appropriately dealt with by the bankruptcy court. In re Rosteck, 899 F.2d 694, 696 (7th Cir. 1990) (internal quotation omitted). Unpaid insurance premiums constitute "debt" for purposes of bankruptcy because they are contingent liabilities. See Stamp v. Insurance Co. of North America, 908 F.2d 1375, 1382 (7th Cir. 1990). Hence, the Green I court had jurisdiction to determine the validity of the policy and the rider.

Based on this, Green asserts an alternative argument. Green argues that if the bankruptcy court did have authority to determine the validity of the policy and the rider, then that authority was limited to a finding of whether the policy and the rider were dischargeable or nondischargeable pursuant to 11 U.S.C. § 523(a)(6) and not whether either should be rescinded or rejected. Again Green is incorrect. It is well established that bankruptcy courts are courts of equity and, accordingly, they may provide such relief as is requested and necessary. See In re Carlson, 126 F.3d 915, 920 (7th Cir. 1997). Thus, the court finds that the bankruptcy court had the power to determine whether to rescind or reject the policy and/or the rider.

### III. Separability

#### A. Separability of the policy and the rider

Green next asserts that the bankruptcy court erred in holding that the policy and the rider could be independently rescinded or rejected. As the bankruptcy court explained, Illinois has not specifically stated whether a life insurance policy may be separated from a disability rider on that policy. However, "contracts of insurance are

7

governed by the same principles of law as govern contracts generally, and the rights of parties and those claiming under them are governed by the agreement as made." In re Cohen's Estate, 163 N.E.2d 533, 536 (Ill. App. Ct. 1st Dist. 1960). Additionally, the policy states that, "[t]he policy and the application together are the entire contract," but does not incorporate the rider. See Kleinman v. Commercial Ins. Co. of Newark, New Jersey, 313 N.E.2d 290, 292 (Ill. App. Ct. 1st Dist. 1974) (quoting similar contract language and considering separately a rider). Further, as the bankruptcy court noted, separate consideration was given for the policy and for the rider, the risk being insured by each differed, and the valued amount of each varied. Accordingly, the court agrees with the bankruptcy court's conclusion that the policy and the rider may be considered separate contracts.

**B. Rescission of the Rider and Rejection of the Policy**

Green argues that the bankruptcy court should not have rescinded the rider. As the bankruptcy court explained, because LifeUSA requested rescission of the rider within the statutory period, it need only prove that Green's application for the rider contained misrepresentations and that these misrepresentations were made with an intent to deceive LifeUSA or that they materially affected the risk accepted by LifeUSA. In re Green, 241 B.R. at 201 (citing Methodist Medical Center of Illinois v. American Nat'l Security, Inc., 38 F.2d 316, 319 (7th Cir. 1994)). The rider application clearly contained misrepresentations. Additionally, LifeUSA may (and has) established that Green's misrepresentations materially affected the risk through testimony of an employee of LifeUSA. See Methodist Medical Center, 38 F.2d at 320. An employee of LifeUSA signed an affidavit stating that had Green provided truthful information, LifeUSA would

8

not have issued the policy as it was constructed. Therefore, the bankruptcy court properly rescinded the rider.

Finally, Green argues that the bankruptcy court erred in rejecting the policy. Under 11 U.S.C. § 365(d)(1), "[I]f the trustee does not assume or reject an executory contract . . . within 60 days after the order for relief . . . then such contract . . . is deemed rejected." As previously explained, the trustee for the estate did not explicitly assume or reject the policy. Due to this inaction, the bankruptcy court properly deemed the policy rejected.

## CONCLUSION

In conclusion, the court finds that the bankruptcy court correctly denied Green's motion to exclude his medical information, properly determined its jurisdiction, and appropriately rescinded the rider and rejected the policy. The November 22, 1999, decision of the bankruptcy court is affirmed.

**ENTER: February 14, 2001**

**Robert W. Gettleman**
**United States District Judge**